UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-222-MOC
3:19-cr-9-MOC-DCK-1

| | |
|---|---|
| LUCAS KENNETH SABATINO, ) <br> ) <br> Petitioner, ) <br> ) <br> vs. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Respondent. ) <br> ) | **ORDER** |

**THIS MATTER** is before the Court on Petitioner's *pro se* 28 U.S.C. § 2255 Motion to Vacate Sentence, (Doc. No. 1).[1]

**I.    BACKGROUND**

Petitioner was charged in the underlying criminal case with sexual exploitation of children (Count One), and use of a facility of interstate commerce to engage in sexual exploitation of children (Count Two). (3:19-cr-9 ("CR") Doc. No. 1).

Petitioner pleaded guilty to Count One pursuant to a written Plea Agreement in exchange for the Government's dismissal of Count Two. (CR Doc. No. 17). Petitioner admitted that he is guilty as charged in Count One. (CR Doc. No. 17 at ¶ 1). The Plea Agreement sets forth Petitioner's sentencing exposure of "a mandatory minimum of 15 years and not more than 30 years' imprisonment…." (CR Doc. No. 17 at ¶ 5). The Plea Agreement states that: the Court would consider the advisory U.S. Sentencing Guidelines; the Court had not yet determined the sentence; any estimate of the likely sentence is a prediction rather than a promise; the Court would have the

---

[1] The Petitioner filed this action in the United States District Court for the Eastern District of Wisconsin; it was transferred to this Court on April 28, 2021. (Doc. No. 3).

1

final discretion to impose any sentence up to the statutory maximum and would not be bound by the parties' recommendations or agreements; and Petitioner would not be permitted to withdraw his plea as a result of the sentence imposed. (CR Doc. No. 17 at ¶ 7).

The parties agreed to jointly recommend the following findings and conclusions regarding the U.S. Sentencing Guidelines: the base offense level is 32 pursuant to § 2G2.1(a); a two-level enhancement applies pursuant to § 2G2.1(b)(1) because the offense involved a minor under the age of 16; a two-level enhancement applies pursuant to § 2G2.1(b)(6)(B) because the Petitioner used a computer or computer interactive service to persuade, induce, coerce, or facilitate the travel of a minor to engage in sexually explicit conduct; the plea is timely for purposes of acceptance of responsibility pursuant to § 3E1.1, if applicable; Petitioner's guidelines range will be calculated pursuant to the career offender or armed career criminal guidelines, if applicable; and Petitioner will register as a sex offender. (CR Doc. No. 17 at ¶ 8). The parties remained free to argue their respective positions regarding any other specific offense characteristics, cross-references, and special instructions, reductions, enhancements, departures, and adjustments to the offense level; and to seek a departure or variance from the applicable guideline range. (Id.).

The Petitioner stipulated to the existence of a factual basis to support the guilty plea as set forth in the Factual Basis, which he read and understood. (CR Doc. No. 17 at ¶ 12). He agreed that the Factual Basis may be used by the Court, United States Probation Office, and United States without objection for any purpose, including to determine the applicable advisory guideline range or the appropriate sentence. (CR Doc. No. 17 at ¶ 13).

The Plea Agreement sets forth the rights Petitioner was waiving by pleading guilty, including the right to: be tried by a jury; be assisted by an attorney at trial; confront and cross-examine witnesses; and not be compelled to incriminate himself. (CR Doc. No. 17 at ¶ 16). The

Plea Agreement contains an express waiver of Petitioner's right to contest his conviction and sentence in post-conviction motions and on appeal except for claims of ineffective assistance of counsel or prosecutorial misconduct. (CR Doc. No. 17 at ¶¶ 17, 18). The Plea Agreement provides that "[t]here are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." (CR Doc. No. 17 at ¶ 24).

The Factual Basis that was filed along with the Plea Agreement describes the offense conduct and contains a certification by counsel that she was satisfied, based on her discussions with Petitioner, that he understands the Factual Basis, Bill of Indictment, and Plea Agreement. (CR Doc. No. 16 at 2).

On May 2, 2019, a United States Magistrate Judge conducted a plea hearing pursuant to Rule 11 at which Petitioner was represented by counsel. (CR Doc. No. 42). Petitioner agreed, under oath, that: his mind was clear; he was not under the influence of alcohol, medicines, or drugs of any kind; and that he understood he was there to enter a guilty plea that cannot later be withdrawn. (CR Doc. No. 42 at 3). He acknowledged that he received a copy of the Indictment and discussed it with his lawyer. (CR Doc. No. 42 at 4). The Magistrate Judge read Count One aloud and informed Petitioner of his sentencing exposure of not less than 15 years nor more than 30 years' imprisonment. (CR Doc. No. 42 at 4-5). Petitioner agreed that he understood the charge and the maximum penalty that could apply to him, and that he is guilty of that crime. (CR Doc. No. 42 at 5, 9). Petitioner confirmed that he had discussed with counsel: how the sentencing guidelines may apply to his case; that the Court would not be able to determine his sentence until a PSR has been prepared; he may receive a sentence that is different from that called for by the guidelines; and he

3

will still be bound by the plea even if he receives a sentence more severe than he expects. (CR Doc. No. 42 at 6-7). Petitioner acknowledged the rights he was waiving by pleading guilty and stated his understanding that the case would proceed directly to sentencing. (CR Doc. No. 42 at 7-8).

The prosecutor summarized the Plea Agreement in open court. (CR Doc. No. 42 at 9-12). Petitioner agreed that he reviewed the Plea Agreement carefully with his lawyer and that he understood and agreed with all its terms including the waiver of his appellate and post-conviction rights. (CR Doc. No. 42 at 13-14). Petitioner stated that he discussed the Factual Basis with counsel, understood it, and agreed with it. (CR Doc. No. 42 at 14-15). Petitioner stated that nobody threatened, intimidated, forced him to plead guilty, or made any promises of leniency or a light sentence other than the terms of the Plea Agreement. (CR Doc. No. 42 at 15). When the Court asked whether Petitioner had enough time to discuss any possible defenses with his lawyer, the following transpired:

> THE COURT: Have you had enough time to discuss with your lawyer any possible defenses you might have to these charges?
>
> THE DEFENDANT: Not really.
>
> THE COURT: Okay. Well, let me ask you – let me – let me ask that a little different way, make sure I understand.
>
> Have you had enough time to talk to your lawyer about the case?
>
> THE DEFENDANT: Yes.
>
> THE COURT: **Have you talked to her about any possible defenses you might have to these charges?**
>
> THE DEFENDANT: **Yes, but I guess there isn't many**.
>
> THE COURT: Okay. Well, it's important that you feel that you've had enough time to talk with her about this. Do you want to talk with her more about possible

4

defenses you might have?

THE DEFENDANT: I guess that's to be down the road.

THE COURT: Well, no. I mean, the time for that would be before you plead guilty.

THE DEFENDANT: Yeah, I did.

THE COURT: I'm sorry?

THE DEFENDANT: Yes, I talked to her.

THE COURT: You did talk to her?

THE DEFENDANT: Yes.

THE COURT: Okay. Well, here's what I'm getting at. **I guess I want to just make sure that you feel you've had enough time to talk to Ms. Cause about your case**.

THE DEFENDANT: **Yes, I have**.

THE COURT: You have?

**And have you talked with her about any possible defenses you may have to the charges?**

THE DEFENDANT: **Yes**.

THE COURT: **Do you want to talk to her any more about that before you enter your plea of guilty?**

THE DEFENDANT: **No**.

THE COURT: Ms. Cause, do you want to comment on this?

[Ms. Cause]:[2] No, Your Honor. I think it's just a difficult matter, but I do think he's – he's ready to conduct this hearing with Your Honor and proceed.

(CR Doc. No. 42 at 15-17) (emphasis added).

Petitioner stated that he was satisfied with his lawyer's services, had heard and understood

---

[2] "The Defendant" in the transcript. (CR Doc. No. 42 at 17).

5

all parts of the proceeding, and still wished to plead guilty. (CR Doc. No. 42 at 17). When the Court asked whether Petitioner had any questions or statements he wished to make, he stated "Only thing I can really say is I'm sorry. I didn't mean for it to happen." (CR Doc. No. 42 at 17-18). Counsel confirmed that she had reviewed all features of the case and the Plea Agreement with Petitioner and was satisfied that Petitioner understood them and knew what he was doing. (CR Doc. No. 42 at 18).

The Presentence Investigation Report's ("PSR") reflects that the Petitioner accepted responsibility in a written statement that he "accept[s] responsibility for [his] offense of conviction as described in the factual basis." (CR Doc. No. 26 at ¶ 20). The PSR scored the base offense level as 32 pursuant to § 2G2.1 because the offense is a violation of 18 U.S.C. § 2251(a). (CR Doc. No. 26 at ¶ 23). Two levels were added: due to the victim's age pursuant to § 2G2.1(b)(1)(B); and because Petitioner used a cell phone and internet chat applications to persuade a minor to engage in sexually explicit conduct pursuant to § 2G2.1(b)(6)(B). (CR Doc. No. 26 at ¶¶ 24, 25). Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 33. (CR Doc. No. 26 at ¶¶ 31-33). Petitioner had zero criminal history points and a criminal history category of I. (CR Doc. No. 26 at ¶ 38). The resulting advisory guidelines range was 135 to 168 months' imprisonment, however the statutorily required minimum sentence is 15 years, resulting in a guideline term of imprisonment is 180 months. (CR Doc. No. 26 at ¶ 53).

In a *pro se* Letter to the Court dated July 9, 2019, Petitioner requested a new lawyer, stating that: his lawyer "is not looking out for [his] best interest;" he felt forced to sign the Plea Agreement because he was "told that there was no other options on [his] case;" the offense was a "mistake"

for which he is sorry; and he had "asked for help because [he has] mental health issues and PTSD."[3] (CR Doc. No. 28 at 1). A hearing regarding the status of counsel came before the Magistrate Judge on August 20, 2019. (CR Doc. Nos. 29, 48). Petitioner stated that: he did not have adequate time to think about the plea and did not fully understand what he was signing; did not feel that his attorney was "seeking [his] best interests in any of this;" and he "[does not] understand why there can't be a better plea to help [him] overcome [his] mental health issues and a couple other issues." (CR Doc. No. 48 at 5, 8-9). Counsel explained that she: had negotiated the best possible plea for Petitioner; did not pressure him to sign anything; made sure that he understood the Plea Agreement he was signing; and hired an expert to talk to Petitioner about mental health issues for mitigation. (CR Doc. No. 48 at 5-7, 9). The prosecutor stated that: counsel had obtained the best possible outcome for Petitioner; a more favorable plea offer would not be forthcoming if Petitioner withdrew his plea; and additional investigation that the Government would have undertaken in preparation for a trial may have increased the Petitioner's sentencing range. (CR Doc. No. 48 at 15-16). The Magistrate Judge found that the attorney-client relationship was not irretrievably broken and that the substitution of counsel was not needed. (CR Doc. No. 48 at 18).

Counsel filed a Sentencing Memorandum asking that the minimum mandatory sentence be imposed and addressing issues including traumatic incidents that occurred when Petitioner was a child, and his struggles with mental health issues. (CR Doc. No. 30). The Memorandum attached a psychological report indicating that Petitioner has: judgment that is "marginal to poor;" cognitive deficits and "low average range of intellectual functioning;" unspecified neurodevelopmental disorder and "deficits in the area of neuropsychological functioning;" persistent depressive

---

[3] The PTSD relates to an incident in 2015 when Petitioner was shot.

disorder; "chronic PTSD;" unspecified cannabis and alcohol use disorder; and test results consistent with "an avoidant, paranoid, and borderline personality," but he "clearly does not suffer from a psychotic disorder." (CR Doc. No. 30-1 at 7-8, 11).

A sentencing hearing came before the Court on October 22, 2019. Petitioner stated that he recalled the Rule 11 hearing, he told the truth in the hearing, and he would probably answer the questions the same way if asked again. (CR Doc. No. 43 at 2-3). Petitioner's attorney stated that she believed Petitioner fully understood the questions he was asked at the Rule 11 hearing. (CR Doc. No. 43 at 3-4). Petitioner stated that he pleaded guilty because he committed that offense. (CR Doc. No. 43 at 4). Petitioner admitted that he went over the PSR with his lawyer and understood it. (CR Doc. No. 43 at 6). Defense counsel noted that the Petitioner is remorseful and that the guidelines would only call for around 11 years' imprisonment, but for the 15-year statutory mandatory minimum. (CR Doc. No. 43 at 8-9). Counsel also referred to the psychological report, and Petitioner's mental health issues and childhood trauma. (CR Doc. No. 43 at 9-12). Petitioner expressed remorse, stated that he made a "mistake in judgment," and suggested the offense would not have happened if he had received help "a long time ago." (CR Doc. No. 43 at 14). The Government noted that the Petitioner had a prior sexual charge notwithstanding his lack of criminal history points,[4] argued that he was attempting to minimize his present conduct, and requested a guideline sentence of 180 months' imprisonment. (CR Doc. No. 43 at 18).

The Court found that the mandatory sentence of 180 months' imprisonment was appropriate in this case. (CR Doc. No. 43 at 19-20). The Judgment was entered on October 28, 2019. (CR Doc. No. 33); see (CR Doc. No. 45) (Amended Judgment addressing restitution).

---

[4] Petitioner was charged in Pennsylvania with statutory sexual assault and corruption of minors in 2002. However, the statutory sexual assault was nolle prossed and he was sentenced to only 2-12 months' imprisonment for corruption of minors. (CR Doc. No. 26 at ¶ 37).

On direct appeal, Petitioner argued that counsel "committed prejudicial ineffective assistance of counsel by failing to raise issues relating to Defendant's mental capacity at the time of the commission of the alleged crime and at the time of trial." (4th Cir. Case No. 19-4809, Doc. No. 25 at 7). The Government moved to dismiss the appeal based on Petitioner's appellate waiver. The Fourth Circuit denied the motion to dismiss but affirmed Petitioner's conviction because ineffective assistance of counsel did not conclusively appear on the face of the record. United States v. Sabatino, 827 F. App'x 330 (4th Cir. 2020). The United States Supreme Court denied certiorari on June 14, 2021. Sabatino v. United States, 2021 WL 2405337 (2021).

Petitioner filed the instant § 2255 Motion to Vacate on October 5, 2020.[5] (Doc. No. 1). He argues *verbatim*:

> Ground One: Defense counsel committed prejudicial ineffective assistance of counsel by failing to raise issue relating to defendant's mental capacity at the time of commission of the alleged crime. The defendant's counsel did not file any motion with the Court which is in any way questioned his mental capacity prior to trial.
>
> Ground Two: Defense counsel committed prejudicial ineffective assistance of counsel by failing to raise issues relating to defendant's mental capacity at the plea hearing. The defendant's counsel did not file any motions with the Court which in any way questioned his mental competency during the plea hearing.
>
> Ground Three: The defendant has asserted to the Court, in a letter,[6] and to his counsel in conference, that he suffered from severe mental issues and substance abuse issues that would impact his mental competency the defense was aware of this and failed to failed to raise them under the correct statutes. The defense counsel was aware of these issues but did not consult with a psychologist until after the plea was entered.

(Doc. No. 1 at 7-9).

---

[5] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

[6] This appears to refer to the July 9, 2019 Letter that resulting in a hearing regarding the status of counsel. (CR Doc. No. 28).

He asks for his plea to be stricken and for a determination of his competence at the time of the offense and at the time of the criminal proceedings. (Doc. No. 1 at 11). The Government filed a Response arguing that the Motion to Vacate should be denied because Petitioner's claims are conclusory and he has not shown deficient performance by counsel or prejudice. (Doc. No. 7). Petitioner has not filed a Reply and the time to do so has expired.

## II. SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

### A. Guilty Plea

As a preliminary matter, "a guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). A knowing and voluntary guilty plea waives any "independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."

10

Blackledge v. Perry, 417 U.S. 21, 29-30 (1974). A defendant who pleads guilty is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id. In order to be competent to plead guilty, the trial court must determine that the defendant made a knowing and voluntary waiver of his trial rights. See Godinez v. Moran, 509 U.S. 389, 400–01 (1993).

Petitioner stated under oath at the Rule 11 hearing that he his mind was clear and he was not under the influence of alcohol, medicines, or drugs of any kind. (CR Doc. No. 42 at 3). He stated that he understood the charges, his sentencing exposure, and the rights he was relinquishing by pleading guilty including the appellate and post-conviction waivers. (CR Doc. No. 42 at 5-6, 13-14). He stated that the guilty plea was freely and voluntarily entered and was not the product of threats, coercion, or promises other than the terms of the Plea Agreement. (CR Doc. No. 42 at 15). He acknowledged that he was guilty of Count One, and understood and agreed with the Factual Basis. (CR Doc. No. 42 at 9, 15). He further agreed that he had discussed any possible defenses with counsel and was satisfied with counsel's services. (CR Doc. No. 42 at 15-17). The foregoing complies with Rule 11 and demonstrates that Petitioner's guilty plea was freely and voluntarily entered with a full understanding of its nature and consequences and that the guilty plea was supported by an independent factual basis. See Fed. R. Crim. P. 11(b)(1)-(3); United States v. DeFusco, 949 F.2d 114, 116 (4th Cir. 1991).

Although the Petitioner suggests that he was not competent to plead guilty, he has not identified any "red flags" that would have required the Court to inquire further into his competency. See United States v. Nicholson, 676 F.3d 376 (4th Cir. 2012) (a trial court need only inquire into a criminal defendant's competence when a response in a plea colloquy raises a red

11

flag as to his competence to plead guilty); Beck v. Angelone, 261 F.3d 377, 387 ("Although there are no 'fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed,' proof 'of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence are all relevant.'"). Petitioner behaved appropriately at the Rule 11 hearing and indicated that the had engaged in meaningful consultation with counsel. See (CR Doc. No. 42). Counsel confirmed that she had reviewed all features of the case and the Plea Agreement with Petitioner, and was satisfied that Petitioner understood them and knew what he was doing. (CR Doc. No. 42 at 18) (Rule 11 hearing); see also (CR Doc. No. 43 at 3-4) (sentencing hearing). The Petitioner has failed to come forward with any evidence whatsoever demonstrating that he was incompetent, or which should have triggered the Court to further inquire into his competency before accepting his guilty plea. His present self-serving suggestions that he did not enter a knowing and voluntary guilty plea, or that his mental status prevented him from doing so, are conclusively refuted by the record including his own sworn statements at the Rule 11 hearing. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, *e.g.*, United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005) (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary).

Accordingly, Petitioner's knowing and voluntary guilty plea waived any allegations of ineffective assistance of counsel that preceded it, including his suggestion that counsel should have

investigated his competency and a possible insanity defense.[7] Therefore, these claims are dismissed and denied. Even if Petitioner's claims of ineffective assistance of counsel were not waived, they would be denied on the merits for the reasons that follow.

### B. Ineffective Assistance of Counsel

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for her defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, a petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced her. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a reviewing court need not even consider the performance prong. Strickland, 466 U.S. at 670.

To demonstrate that counsel performed deficiently by failing to investigate a claim of

---

[7] The argument that ineffective assistance of counsel rendered his plea involuntary is further discussed in Section B, *infra*.

incompetency, a petitioner must prove only that the court would have held a competency hearing had counsel raised the issue. Becton v. Barnett, 920 F.2d 1190, 1193-94 (4th Cir. 1990). The test for determining legal competency is whether a defendant has a rational understanding of the proceedings and can assist in his own defense. See Dusky v. United States, 362 U.S. 402, 402 (1960) (*per curiam*). A district court must order a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). Whether "reasonable cause" exists is a question left to the sound discretion of the district court. United States v. Bernard, 708 F.3d 583, 592 (4th Cir. 2013). Reasonable cause may be established through "evidence of irrational behavior, the defendant's demeanor at trial, and medical opinions concerning the defendant's competence." Id. at 592-93 (internal quotation marks omitted). The mere presence of "mental illness is not to be equated with incompetence." Id. at 593 (internal quotation marks omitted).

An insanity defense requires the defendant to prove by clear and convincing evidence "that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts." 18 U.S.C. § 17(a). However, "[m]ental disease or defect does not otherwise constitute a defense." Id. "Insanity may be argued as a defense only if evidence supporting the assertion has been presented." United States v. Green, 468 F.2d 116, 118 (4th Cir. 1972). An attorney who reasonably determines that presenting an insanity defense is futile and chooses not to pursue it is not ineffective. See Knowles v. Mirzayance, 556 U.S. 111, 125 (2009) (counsel was not ineffective for withdrawing an insanity defense after reasonably concluding that the defense would "almost

14

certainly lose"); United States v. Cintron, 163 F.3d 599 (4th Cir. 1998) (counsel was not ineffective for determining that the defendant could not credibly assert an insanity defense).

To show prejudice in the context of counsel's alleged failure to adequately address mental health, a petitioner has to show a reasonable probability that counsel could have established that he was "not competent to stand trial" by showing that petitioner was unable to consult with counsel with a reasonable degree of rational understanding and unable to understood the proceedings against him, or in the alternative, that petitioner was "not guilty by reason of insanity." Mann v. United States, 66 F. Supp. 3d 728, 739 (E.D. Va. 2014) (quoting Becton, 920 F.2d at 1194).

Here, Petitioner asserts that he suffered from "severe mental issues and substance abuse issues that would impact his mental competency…" of which counsel was aware, yet counsel failed to consult with a psychologist until after Petitioner had entered his guilty plea. (Doc. No. 1 at 9). These claims are too vague and conclusory to warrant relief, as Petitioner fails to identify the specific mental health conditions to which he refers, or explain why those conditions should have caused the Court to reasonably doubt Petitioner's competence such that a competency hearing would have been granted. See generally United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (vague and conclusory allegations in a § 2255 petition may be disposed of without any further investigation).

Petitioner argued on direct appeal that counsel was ineffective for failing to raise issues relating to his mental capacity when he committed his crime and pleaded guilty. The Fourth Circuit found no evidence on the face of the record of ineffective assistance with regards to Petitioner's mental status. The Petitioner has failed to present any argument or evidence that was not already considered by the Fourth Circuit on direct appeal and his present claims of ineffective assistance of counsel likewise fail. See Dyess, 730 F.3d at 360 (a criminal defendant may not "circumvent a

15

proper ruling ... on direct appeal by re-raising the same challenge in a § 2255 motion."); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir.1976) (holding that a criminal defendant cannot "recast, under the guise of collateral attack, questions fully considered by this court [on direct appeal]"); United States v. Roane, 378 F.3d 382, 396 n. 7 (4th Cir. 2004) (absent "any change in the law," defendants "cannot relitigate" previously decided issues in a § 2255 motion).

Petitioner's claims are also facially insufficient in that Petitioner does not attempt to demonstrate prejudice. He fails to explain how there is a reasonable probability that the outcome of the proceeding would have been different but for counsel's allegedly deficient performance. He does not allege, for instance, that he would not have pleaded guilty had counsel investigated his mental issues sooner. Any such suggestion would be rejected because it would not have been objectively reasonable for Petitioner to proceed to trial under the circumstances. The Plea Agreement was favorable in that it led to the dismissal of a serious charge and prevented the Government from further investigating the Petitioner's acts, and there was strong evidence of Petitioner's guilt as outlined in the Factual Basis and acknowledged by Petitioner in open court. See generally United States v. Santiago, 632 F. App'x 769, 774 (4th Cir. 2015) ("when the Government's case is strong," a § 2255 petitioner "faces a nearly insurmountable obstacle to showing that it would have been rational to go to trial."); United States v. Fugit, 703 F.3d 248, 259 (4th Cir. 2012) (finding that the decision to go to trial would not have been objectively reasonable where the evidence of petitioner's guilt was overwhelming); (CR Doc. No. 42 at 16) (Petitioner admitted at the Rule 11 hearing that he had discussed potential defenses with counsel but that there "isn't [sic] many"). Accordingly, Petitioner's claims of ineffective assistance of counsel will be dismissed and denied.

## IV. CONCLUSION

For the foregoing reasons, the § 2255 Motion to Vacate is dismissed with prejudice and denied.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DISMISSED** with prejudice and **DENIED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

3. The Clerk is instructed to close this case.

Signed: October 28, 2021

Max O. Cogburn Jr
United States District Judge